UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |
|---|---|
| IN THE MATTER OF APPLICATION OF THE UNITED STATES FOR TAXPAYER RETURN INFORMATION | Case No. 6:16-cv-00138-GFVT<br><br>**OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

The United States of America, pursuant to 26 U.S.C. § 6103(i)(1), filed an application for an *ex parte* order directing the Internal Revenue Service to disclose certain tax return information in furtherance of a public corruption investigation. United States Magistrate Judge Hanly A. Ingram reviewed the Government's application and denied it, and the United States now appeals that decision to the undersigned. Importantly, the Government argues the "reasonable cause" standard of proof required under 26 U.S.C. § 6103(i)(1)(B)(i) presupposes a lesser burden than the "probable cause" standard which Judge Ingram applied when reviewing the application. For the reasons that follow, the Court agrees with the United States and finds that § 6103(i) requires the Government to satisfy a lower evidentiary threshold than "probable cause" to obtain a court order under the statute.

**I**

The Internal Revenue Code permits, under limited circumstances, federal law enforcement to obtain tax return information for use in non-tax related criminal investigations.

Specifically, 26 U.S.C. § 6103(i) allows a federal district court or magistrate judge to grant an *ex parte* order allowing disclosure of tax return information to federal law enforcement when:

> (i) there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed,
>
> (ii) there is reasonable cause to believe that the return or return information is or may be relevant to a matter relating to the commission of such act, and
>
> (iii) the return or return information is sought exclusively for use in a Federal criminal investigation or proceeding concerning such act . . . , and the information sought to be disclosed cannot reasonably be obtained, under the circumstances, from another source.

26 U.S.C. § 6103(i)(1)(B).

In the matter at hand, the Government submitted an application for tax return information to United States Magistrate Judge Hanly A. Ingram, in furtherance of a Federal Bureau of Investigation public corruption investigation. [*See* R. 3 at 1-3.] At Judge Ingram's request, the United States also submitted a memorandum addressing its position on the standard of proof required by 26 U.S.C. § 6103(i)(1)(B)(i)—namely, that "reasonable cause" as used in the statute requires a lower showing than the "probable cause" standard applicable to Fourth Amendment searches and seizures. [*Id.* at 3.] Judge Ingram considered the Government's memorandum but ultimately determined "reasonable cause" to equal the "probable cause" burden of proof. [*See* R. 2.] Applying a "probable cause" standard to the Government's application, Judge Ingram found the application deficient. [*Id.* at 8-11.]

Subsequently, the United States appealed to the undersigned, arguing that "reasonable cause" should not be equated with "probable cause." [R. 3.] The Court, desiring to consider the matter through the proven benefits of the adversarial process, appointed additional counsel to assist in a more thorough briefing of the issues [*see* R. 1; R. 4], and now sets forth its opinion on the appropriate meaning of "reasonable cause" as used in

§ 6103(i)(1)(B)(i).

## II

This appeal presents a matter of statutory interpretation. When engaging in statutory interpretation in the Sixth Circuit, "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 390 n. 6 (6th Cir. 2007) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005)). This requires a judge to first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *see also Brilliance Audio, Inc. v. Haights Cross Comm., Inc.*, 474 F.3d 365, 371-72 (6th Cir. 2007). Whether the language of a statute is plain and unambiguous depends upon not only the language itself, but also upon the "specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341; *see also United States v. Meyers*, 952 F.2d 914, 918 (6th Cir. 1992).

Further, it has long been the rule that the Court's analysis does not resort to legislative history where the statutory language is unambiguous and the statutory scheme is coherent and consistent. *See, e.g.*, *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002); *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 207 (6th Cir. 2004). However, resort to legislative history may be appropriate where a statute's meaning is ambiguous. In that situation, the Sixth Circuit remains "mindful of the limited utility and reliability of legislative history," *City of Cookeville*, 484 F.3d at 390 n. 6, and still emphasizes that "Congress's intent is better derived from the words of the statute itself than from a patchwork record of statements inserted by individual legislators and proposals that may never have been adopted by a committee, much less

an entire legislative body." *Isle Royale Boaters Ass'n v. Norton*, 330 F.3d 777, 784-85 (6th Cir. 2003) (internal quotation marks and citations omitted). This view is informed by a long line of Supreme Court precedent. Justice Jackson, for example, cautioned that "[r]esort to legislative history is only justified where the face of the Act is inescapably ambiguous, and then . . . should not go beyond Committee reports, which presumably are well considered and carefully prepared." *Schwegmann Bros. v. Calbert Distillers Corp*., 341 U.S. 384, 395 (1951) (Jackson, J., concurring).

Consistent with these principles, the Court turns to the language of the statute in question. In order to secure an *ex parte* order from the Court for access to tax return information, 26 U.S.C. § 6103(i)(1)(B)(i) requires the United States to show that "there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed." Congress has not defined "reasonable cause" anywhere in the statute, and after careful consideration of the term, the Court concludes its meaning here is "inescapably ambiguous." *See Schwegmann Bros*., 341 U.S. at 395.

Upon initial consideration of the statutory text, "reasonable cause" seems to plainly denote a lower standard of proof than the phrase "probable cause" would require. Standing alone, the words "reasonable" and "probable" are notably distinct. "Probable" is defined as "(1) supported by evidence strong enough to establish presumption but not proof; (2) establishing a probability; (3) likely to be or become true or real." *See* http://www.merriam-webster.com/ (last visited August 30, 2016). "Reasonable," however, simply means "being in accordance with reason." *Id.* Nevertheless, "[t]echnical words and phrases which have acquired a peculiar and appropriate meaning in the law cannot be presumed to have been used by the legislature in a

loose popular sense." 73 AM. JUR. 2D *Statutes* § 143 (2016). The Court must also be mindful of any legal significance embodied in the statutory language in question.

Black's Law Dictionary equates "reasonable cause" with "probable cause." *See* BLACK'S LAW DICTIONARY (10th ed. 2014). No definition is given for "reasonable cause;" rather, "probable cause" is cross-referenced.[1] *Id.* And, as the Magistrate Judge's order points out, the 1976 Supreme Court decision *United States v. Watson* repeatedly uses the phrases "reasonable cause" and "probable cause" interchangeably. *See* 423 U.S. 411 (1976); [R. 2 at 3-4.] But while various lower courts have relied upon *Watson* and considered the two phrases synonymous, some ambiguity regarding an exact legal definition of "reasonable cause" still exists.

The year after *Watson*, the Supreme Court considered the phrase "reasonable cause to suspect" as used in 19 U.S.C. § 482 and articulated a different definition for the phrase than the "probable cause" standard. *See United States v. Ramsey*, 431 U.S. 606, 612-14 (1977). Admittedly, the "reasonable cause to ***suspect***" language at issue in *Ramsey* is distinct from the § 6103 phrase "reasonable cause to ***believe***." But the decision suggests the phrase "reasonable cause" itself may not automatically equate with "probable cause" in all situations. And more recently, the Sixth Circuit explained that the phrase "reasonable ***grounds*** to believe that [records] are relevant and material to an ongoing criminal investigation," as used in the Stored Communications Act, means something less than Fourth Amendment "probable cause" protection. *See United States v. Carpenter*, 819 F.3d 880, 889 (6th Cir. 2016) (emphasis added). While the holdings of *Ramsey* and *Carpenter* may not be *per se* controlling over the present inquiry, the Court finds the decisions contribute to a finding of ambiguity. This situation is,

---

[1] "Probable cause" is then defined as a "reasonable ground to suspect that a person has committed or is committing a crime or that a place contains specific items connected with a crime." *See* BLACK'S LAW DICTIONARY (10th ed. 2014).

5

indeed, the rare one where a statute's legislative history is appropriately considered. *See, e.g.*, *Schwegmann Bros.*, 341 U.S. at 395.

As noted above, the Court limits its consideration of legislative history to the House of Representatives and Senate committee reports, as those reports "presumably are well considered and carefully prepared." *Id.*; *see also United States v. Int'l Union UAW-CIO*, 352 U.S. 567, 585 (1957) (noting committee reports are entitled to greater weight than floor debates). Fortunately, the Senate Committee Report as well as both the House and Senate Conference Reports shed light on the Court's present inquiry. Specifically, the legislative history demonstrates that "reasonable cause" does not mean "probable cause" for purposes of § 6103.

When originally considered by the House Committee on Ways and Means, the Tax Reform Act bill did not address the use of tax return information in non-tax criminal investigations. *See* H.R. REP. NO. 94-658 (1975). The Senate Committee on Finance, however, proposed amending the bill in several ways, including the addition of the language which is now § 6103(i). *See* S. REP. NO. 94-938, pt. 1, at 328 (1976). The Senate committee report states:

> Under section 6103(i), as amended, disclosure of a return or return information received from a taxpayer, subject to one exception, noted below, would be made to a Federal agency for nontax criminal purposes only upon the grant of an *ex parte* order by a Federal district court judge.
>
> The order would be granted upon the determination of the judge that there is 1) reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed, 2) reason to believe that such return or return information is or may be probative of the commission of such criminal act, and 3) reason to believe that the information sought to be disclosed cannot reasonably be obtained from any other source. . . .
>
> ***The first requirement set forth above ("reasonable cause . . .") is intended to be less strict than the "probable cause" standard for issuing a search warrant and this requirement is to be construed according to the plain meaning of the words involved.***

*Id.* (emphasis added). A conference committee was convened to address the proposed Senate amendments, and the conference reports from both houses confirm the conference committee voted to adopt the Senate proposal regarding § 6103(i). *See* H.R. REP. NO. 94-1515, at 482 (1976) (Conf. Rep.); S. REP. NO. 94-1236, at 482 (1976) (Conf. Rep.).

Furthermore, the Court is persuaded by the Government's argument that the context of the material at issue in § 6103(i) supports a lower evidentiary threshold than "probable cause." In a § 6103(i) application, the Department of Justice seeks access to tax return information, which is information already in the hands of another government agency. Individuals are mandated to provide the information to the Internal Revenue Service in the first instance, and § 6103(i) merely creates a way for that information to be transferred to the Department of Justice in the limited circumstances Congress has deemed appropriate. This information, already disclosed to one division of the federal government, is sensibly subject to a lower threshold of protection than that given to an individual's house or computer pursuant to the Fourth Amendment "probable cause" standard.

Satisfied, then, that "reasonable cause" in § 6103 does not mean "probable cause" but, rather, something "less strict," *see* S. REP. NO. 94-938, pt. 1, at 328 (1976), the Court must consider what evidentiary showing § 6103(i)(1)(B)(i) does require. To begin, the evidentiary threshold required by § 6103 appears relatively consistent with the "reasonable suspicion" standard articulated in *Terry v. Ohio* for a stop-and-frisk procedure. *See* 392 U.S. 1 (1968). In a *Terry* stop, a law enforcement officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. A similar evidentiary standard is articulated in the Sixth Circuit's recent *United States v. Carpenter* decision. *See* 819 F.3d 880. In *Carpenter*, the Sixth Circuit noted the

7

"reasonable grounds to believe" requirement in the Stored Communications Act represents a "middle ground between full Fourth Amendment protection and no protection at all, requiring that the government show 'reasonable grounds' but not 'probable cause'. . . ." *Id.* at 889; *see also* 18 U.S.C. § 2703(d) (allowing the Government to obtain a court order where the government "offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of [the records] are relevant and material to an ongoing criminal investigation"). Finally, the 1977 report of the Privacy Protection Study Commission[2] describes the evidentiary threshold required by § 6103 as follows:

> To find that the first two conditions [of § 6103(i)(1)(B)] exist, the judge apparently needs to conclude ***only that there is some basis to believe that a crime has been committed and that the information sought may be relevant to the investigation of a crime.*** Any law enforcement authority conducting any legitimate investigation should be able to satisfy both condition easily.

PERSONAL PRIVACY IN AN INFORMATION SOCIETY: THE REPORT OF THE PRIVACY PROTECTION STUDY COMMISSION 555 (July 1977), *available at* https://epic.org/privacy/ppsc1977report/ (emphasis added).

---

[2] The United States Privacy Protection Study Commission was established by the original Privacy Act of 1974 to evaluate the Privacy Act and to issue a report containing recommendations for its improvement. The Commission issued the report cited above, *Personal Privacy in an Information Society*, in 1977, and subsequently ceased operation. *See Role of the Privacy Protection Study Commission*, UNITED STATES DEPARTMENT OF JUSTICE, https://www.justice.gov/opcl/role-privacy-protection-study-commission (July 16, 2015). As part of its report, the Privacy Commission evaluated the Tax Reform Act of 1976 and explained whether or not that Act conformed to the Privacy Commission's recommendations about the disclosure of tax return information. According to the report, the Privacy Commission recommended that federal law enforcement officials be bound by the same restrictions when accessing tax return information from the Internal Revenue Service as they would be "if the same information were maintained by the taxpayer himself": in short, the Commission recommended a "probable cause" standard. PERSONAL PRIVACY IN AN INFORMATION SOCIETY: THE REPORT OF THE PRIVACY PROTECTION STUDY COMMISSION 553 (July 1977). The report describes the "reasonable cause" standard actually enacted by the Tax Reform Act as requiring a significantly lower burden of proof on behalf of the Government than the Privacy Commission actually recommended or desired. *Id.* at 555.

Accordingly, the Court concludes the meaning of "reasonable cause" in § 6103 presupposes a lower burden of proof than probable cause. Whereas "probable" suggests something that is more likely than not to occur, "reasonable" implies merely that some foundation exists for a rational person to take up a particular view or carry out a certain act. Further, the legislative history clearly suggests a lower evidentiary standard was contemplated, and the context of the information at issue also favors a distinct standard of proof. Therefore, the Court finds that the Government need not satisfy the Fourth Amendment "probable cause" standard to obtain an *ex parte* court order pursuant to § 6103(i). Instead, the Government need only make some rational showing, supported by reliable evidence, that a criminal act has been committed and that the tax return information may be relevant to that crime. *See* 26 U.S.C. § 6103(i)(1)(B)(i)-(ii).

### III

For the foregoing reasons, it is hereby **ORDERED** as follows:

1. The Magistrate Judge's Opinion [R. 4], insofar as it equates "reasonable cause" with "probable cause for the purpose of interpreting 26 U.S.C. § 6103(i)(1)(B)(i), is **OVERRULED**; and

2. This matter is **REMANDED** to United States Magistrate Judge Hanly A. Ingram to consider the Government's application in light of the legal standard set forth above.

This the 6th day of September, 2016.

Gregory F. Van Tatenhove
United States District Judge